**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Navid Vijdani,

           Petitioner

v.

John Mattos, et al.,

           Respondents

Case No.: 2:25-cv-02438-JAD-NJK

**Order Granting Habeas Petition**

[ECF No. 14]

Petitioner Navid Vijdani is an Iranian citizen who arrived in the United States in 1995 and was ordered removed in December 2025. He has been in Immigration and Customs Enforcement (ICE) custody at the Nevada Southern Detention Center ever since. Vijdani filed a pro se habeas petition in December 2025. The court appointed counsel, who filed a first amended habeas petition seeking Vijdani's immediate release. Vijdani argues that ICE has detained him for too long without showing that he is likely to be removed in the reasonably foreseeable future and that ICE's policy of removing noncitizens to a third country without adequate notice or a hearing violates his due-process rights.

I grant Vijdani's habeas petition. Vijdani has been detained under a final removal order for more than six months. He has shown that there is no good reason to believe that his removal is forthcoming, and the government has failed to present any competent evidence suggesting otherwise. Vijdani has also demonstrated that ICE's third-country-removal policy violates the Fifth Amendment's due-process clause. So I order Vijdani's immediate release, subject to reasonable conditions of supervision. I also prohibit the respondents from re-detaining Vijdani absent a demonstrable change in circumstances in ICE's ability to remove him. And I prohibit

the respondents from removing Vijdani to an alternative third country without first providing adequate notice and a meaningful opportunity to seek any available relief from that removal.

## Background

Vijdani is an Iranian citizen who came to the United States with his family as a refugee in 1995.[1] Vijdani has mental-health diagnoses and a lengthy criminal history.[2] In August 2025, Vijdani was arrested by local law enforcement and held at the Clark County Detention Center (CCDC) for a petit larceny offense.[3] In September 2025, ICE took him from CCDC custody and detained him at the Nevada Southern Detention Center, where he has been detained since.[4] On December 1, 2025, an immigration judge ordered Vijdani's removal to Iran.[5] Vijdani waived his right to appeal that order, so it became final on the date it was issued.[6]

## Discussion

**A.    This court has jurisdiction over Vijdani's claims.**

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[7] That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is

---

[1] ECF No. 18-1 at 4.

[2] *Id.*; ECF No. 14 at 4 (alleging that Vijdani's "diagnoses include schizophrenia, bipolar disorder, depression, and anxiety").

[3] ECF No. 18-1 at 3.

[4] *Id.*

[5] ECF No. 18 at 1.

[6] *Id.* at 2.

[7] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

illegally detained.  The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States' immigration laws.[8]

**B.      Vijdani has shown that he is entitled to relief on his prolonged-detention claim.**

*1.      The government has authority to detain noncitizens after they have been ordered removed.*

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens.  8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed.  It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order," or (iii) the date the noncitizen is released from non-immigration detention.[9]  During that 90-day period, detention is mandatory.[10]  The statute gives the government the ability to detain a noncitizen beyond that 90-day removal period under § 1231(a)(6) if he is inadmissible, removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy,"[11] or has been determined "to be a risk to the community or unlikely to comply with the order of removal."[12]  If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[13]

---

[8] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[9] 8 U.S.C. § 1231(a)(1)(B).

[10] 8 U.S.C. § 1231(a)(2)(A).

[11] *Zadvydas*, 533 U.S. at 682.

[12] 8 U.S.C. § 1231(a)(6).

[13] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

**2.      *The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.***

Section 1231(a)(6) contains no limit on the length of time that a noncitizen may be held after his removal order becomes final.  But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[14]  To avoid those constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[15]  It determined that six months of post-removal-period detention is presumptively reasonable.[16]  But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[17]  If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[18]  And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[19]

---

[14] *Id.* at 690.

[15] *Id.* at 699.

[16] *Id.* at 701.

[17] *Id.*

[18] *Id.*

[19] *Id.* (cleaned up).

### 3. *Vijdani has shown good reasons to believe that he will not be removed in the reasonably foreseeable future, and the government has not rebutted that showing with any evidence of likely removal.*

As of the date of this order, Vijdani has been detained for six months since his removal order became final. So Vijdani bears the initial burden of showing that there are "good reason[s] to believe that there is no significant likelihood of removal in the reasonably foreseeable future."[20] To meet that burden, Vijdani argues that his removal to Iran is unlikely. He cites to the habeas case for his brother, Naim VijDani, as circumstantial evidence of the government's inability to remove his family to Iran. Naim was ordered removed eight years ago, but the government was never able to effectuate his removal. Earlier this year, another judge in this district released him from immigration custody, finding there was no significant likelihood of Niam's removal in the reasonably foreseeable future.[21] I find that Vijdani's allegations are sufficient to establish good reason to believe that he is not likely to be removed in the reasonably foreseeable future.

The government does not meet its shifted evidentiary burden to show that Vijdani's removal is foreseeable. Its response was filed three months ago and primarily argues that it "should be given the full six-month period to obtain travel documents and complete removal proceedings."[22] That six-month period has elapsed, and the government has not filed any updates indicating that Vijdani's removal has been effectuated or is now foreseeable. The government also relies on the fact that some Iranian nationals were deported in late 2025, but evidence that some noncitizens were deported does not constitute evidence that Vijdani will be.

---

[20] *Id.* at 701.

[21] *Vijdani v. Mattos*, 2026 WL 560209 (D. Nev. Feb. 27, 2026).

[22] ECF No. 17 at 8.

Plus, the government acknowledges that relations between Iran and the United States are in a dramatically different posture than they were in late 2025: the countries are now engaged in a major armed conflict.[23] And on May 8, 2026, the government affirmatively conceded that "travel documents for petitioner are currently unobtainable" because of that conflict.[24] Because the government has not shown that Vijdani's continued detention is statutorily authorized or that there is a significant likelihood of his removal in the reasonably foreseeable future, I grant his petition on this ground and order his release.[25]

**D.    Vijdani has shown that the government's third-country-removal procedures violate due process.**

*1.    The government's policy provides notice of third-country removal on a truncated timeline and allows screening for fear-based claims if the detainee affirmatively raises them.*

Once it has been determined that a noncitizen is to be removed from the United States, 8 U.S.C. § 1231(b) governs where he will be removed to. The first choice is a country "to which the [noncitizen] wants to be removed."[26] If deportation to that country isn't possible, the immigration judge has a list of other options, including the country from which the noncitizen entered the United States, the noncitizen's last country of residence, the country in which the noncitizen was born, and others.[27] If all of those enumerated country options are "impracticable,

---

[23] *Id.*

[24] ECF No. 24 at 4.

[25] I do not consider Vijdani's separate claim that his prolonged detention violates the Fifth Amendment's due-process clause. In *Zadvydas*, the High Court interpreted § 1231(a)(6) to prohibit prolonged detention to avoid the constitutional concerns raised by a different interpretation. I follow in the Supreme Court's footsteps and do not reach Vijdani's due-process arguments because he is entitled to the relief he seeks under *Zadvydas*'s statutory limitation.

[26] 8 U.S.C. § 1231(b)(2)(A).

[27] 8 U.S.C. §§ 1231(b)(2)(E)(i–vi).

inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept" him.[28]  Removal to a country not listed on a noncitizen's removal order is commonly referred to as a third-country removal.

There is one statutory restriction on third-party removal: "the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion."[29]  And the United Nations Convention Against Torture (CAT), ratified by the United States through the Foreign Affairs Reform and Restructuring Act, entitles noncitizens to seek asylum or withholding of removal to a country in which they are likely to be persecuted or tortured.  Normally, a noncitizen raises CAT protections at or directly following his initial removal proceedings.  It appears that no immigration statute or regulation addresses how a noncitizen may raise a CAT challenge after ICE determines that deportation to the country on his removal order is impracticable and instead chooses to pursue a third-country removal.

In early 2025, ICE tried to fill that statutory gap.  It issued a policy explaining that, as long as "the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured" and those assurances are deemed "credible" by the Department of State, ICE need not give any notice or opportunity to be heard to noncitizens who are being removed to that country.[30]  In all other cases, ICE must serve a notice of removal on the noncitizen that informs him of the intended

---

[28] 8 U.S.C. § 1231(b)(2)(E)(vii).

[29] 8 U.S.C. § 1231(b)(3)(A).

[30] ECF No. 15-4.

country of removal.[31]  ICE "will generally wait at least 24 hours following service of the notice of removal before effectuating removal," but the policy allows removal on a mere six hours' notice "as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal."[32]

After the notice of removal is served, the ICE officer "will <u>not</u> affirmatively ask whether the [noncitizen] is afraid of being removed" to that country, but if the noncitizen independently and "affirmatively state[s]" a fear of removal, ICE's Enforcement and Removal Operations (ERO) division "will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection" under CAT.[33]  If (through an unidentified process) USCIS determines that the noncitizen has not shown that he "would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal," the noncitizen will be removed.[34]  If USCIS determines that the noncitizen "has met this standard," ICE will file a motion to reopen immigration proceedings for the "sole purpose of determining eligibility for protection under" 8 U.S.C. § 1231(b)(3) and CAT for the country of removal.[35]

### 2.   *ICE's third-country policy violates due process, so any attempt to remove Vijdani to a third country must be preceded by notice and a meaningful opportunity to be heard.*

Vijdani contends that ICE's third-country-removal policy does not provide adequate notice or an opportunity to be heard, thus violating the Fifth Amendment's due-process clause.[36]

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] ECF No. 17 at 16–17.  Vijdani also challenges the policy under the Administrative Procedure Act.  In that claim, he essentially argues that the government violated the APA by using a

"The Due Process clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."[37]  The "fundamental features of due process" are notice and an opportunity to be heard.[38]

The Ninth Circuit has not expressly ruled on what process is due to noncitizens faced with third-country removal.  But it has come close.  In *Andriasian v. INS*, the Ninth Circuit panel held that immigration officials could not add a new country to the petitioner's removal order without proper notice.[39]  It explained that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."[40]  And in the unpublished case of *Najjar v. Lynch*, another Ninth Circuit panel cited *Andriasian* for the proposition that, "[i]n the context of country-of-removal designations, last minute orders of removal to a country may violate due process if a[] [noncitizen] was not provided an opportunity to address his fear of persecution in that country."[41]

District courts have extrapolated these holdings to find that adequate due process requires ICE to (1) provide notice, (2) "ask the noncitizen whether he or she fears persecution or harm upon removal to the designated country and memorialize in writing the citizen's response," (3) "inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts" if the answer to that question is

procedure that violates due process.  *See id.*  Because Vijdani's due-process claim on its own justifies release, I do not separately consider whether the government has violated the APA.

[37] *Zadvydas*, 533 U.S. at 693 (cleaned up).

[38] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205 (9th Cir. 2022).

[39] *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

[40] *Id.*

[41] *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (unpublished) (cleaned up).

9

yes, and (4) provide "adequate time to prepare and file a motion to reopen[.]"[42]  Said more succinctly, "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation."[43]  District courts across the country have also routinely found that ICE's third-country policy doesn't comport with due process.[44]

It is abundantly clear that the first third-country-removal option—immediate deportation without notice so long as the accepting country gives generalized assurances that it will not torture anyone—doesn't provide adequate due process to a noncitizen who may be removed to that country.  Notice, let alone an opportunity to be heard, is not available to a noncitizen in that situation.  And ICE's second scheme doesn't fare much better.  Though the policy requires notice, it may be given in as little as six hours before the noncitizen's removal and that notice explicitly does not advise the noncitizen that he may seek withholding, deferral, asylum, or other protections if he fears removal to that third country.  Even if the noncitizen knows to affirmatively state a fear of removal, the policy does not afford him a hearing of any kind unless a USCIS officer determines, through an unexplained process, that the noncitizen would be likely

---

[42] *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019–20 (W.D. Wash. 2019); *see also, e.g.*, *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025).

[43] *Aden*, 409 F. Supp. 3d at 1009 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976); *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998)); *see also Kumar v. Wamsley*, 2025 WL 3204724, at *5 (W.D. Wash. Nov. 17, 2025) (finding that this due-process requirement "flows directly from Ninth Circuit precedent" requiring notice of a noncitizen's right to apply for asylum or withholding of removal to a previously undisclosed country).

[44] *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 728 ("This policy contravenes Ninth Circuit law . . . . It would be impossible to comply both with Ninth Circuit precedent and this policy."); *Vu v. Noem*, 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases); *D.V.D. v. DHS*, 2025 WL 1142968 (D. Mass. Feb. 25, 2026).

to prove that any of those protections applies.  So this process does not comport with the fundamental requirements of due process.

### 3. *Vijdani has standing to challenge the third-country-removal policy.*

The government does not respond to the merits of Vijdani's third-country-removal claim. It instead insists that he "is not subject to third-country removal" because he did not seek asylum or withholding of removal.[45]  But the government doesn't support its apparent belief that third-country removal cannot occur unless asylum or withholding is at issue, and I find no statutory support for that limitation.  Though the government doesn't frame it as such, I construe its arguments as a lack-of-standing argument based on the fact that it still intends to deport Vijdani to Iran.

A petitioner seeking prospective injunctive relief may show he has standing to pursue that relief if "he is realistically threatened by a repetition of the violation."[46]  If a plaintiff's potential injury stems from a written policy or a pattern of officially sanctioned behavior, he need not have already suffered a harm in order to seek prospective injunctive relief.[47]  Rather, "the plaintiff must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a

---

[45] ECF No. 17 at 11.

[46] *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012).

[47] *See id.* at 998 ("First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury stems from that policy.  Second, the plaintiff must demonstrate that the harm is part of a pattern of officially sanctioned behavior, violative of the plaintiff's federal rights." (cleaned up)).

similar way."[48]  That an injury is "directly traceable to a written policy [suggests that] there is an implicit likelihood of its repetition in the immediate future."[49]

Vijdani has shown that he is likely to be harmed by ICE's third-country-removal policy. The government has failed to show any active attempts to remove him to Iran and has admitted that doing so is currently impossible.  If the government determines that Iran is not a viable removal option for the foreseeable future (which seems likely), the third-country-removal policy allows ICE to remove Vijdani to a third country with little or no notice and no meaningful opportunity to challenge that removal.

Because Vijdani is subject to ICE's removal discretion, and given that ICE has endorsed a policy for third-country removal that could affect any noncitizen who faces hurdles being removed to his home country, it is entirely likely that Vijdani could be subject to a third-country removal without any opportunity to raise fear-based challenges to that removal.  And because of the policy's emphasis on speedy removal without process, it's likely that a noncitizen like Vijdani could be removed to a third country before he has the chance to raise his constitutional concerns through a habeas petition.  So I join the growing number of courts finding that a noncitizen awaiting removal has standing to challenge the government's third-country-removal policy.[50]  And because that policy violates due process, I prohibit the federal respondents from rearresting Vijdani with the intention of removing him to a third country unless they comply with the notice-and-hearing requirements established above.

---

[48] *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007), *abrogated on other grounds as recognized in Healy v. Milliman*, 164 F.4th 701 (9th Cir. 2026).

[49] *Id.* at 986.

[50] *See, e.g.*, *Esmail v. Noem*, 2025 WL 3030589, at *5 (C.D. Cal. Sept. 26, 2025); *Elshourbagy v. Bondi*, 2025 WL 3718993, at *6 (W.D. Wash. Dec. 23, 2025); *Nguyen*, 796 F. Supp. at 736.

**Conclusion**

IT IS THEREFORE ORDERED that petitioner Navid Vijdani's petition for a writ of habeas corpus under 28 U.S.C. § 2241 **[ECF No. 14] is GRANTED**. Petitioner **Navid Vijdani must be released from detention within three days of this order, subject to reasonable conditions of supervision.**[51] **Imposition of those conditions must not impede Vijdani's timely release.**

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

(1) notice of the date, time, and location of Vijdani's release at least 24 hours before the release is set to occur, and

(2) within four days of this order, notice that Vijdani's release was effectuated.

IT IS FURTHER ORDERED that **the federal respondents are enjoined from re-detaining Navid Vijdani absent proof of changed circumstances making his removal reasonably foreseeable.**

IT IS FURTHER ORDERED that the **federal respondents are enjoined from removing Navid Vijdani to any country not listed on his removal order unless it first complies with the notice-and-hearing requirements detailed in this order**.

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

---

[51] The government asked in its response that the court order a bond hearing with an immigration judge before releasing Vijdani, due to his mental-health diagnoses and criminal history. ECF No. 17 at 11–13. I ordered supplemental briefing on this issue, and the government then conceded that there is no statutory authority to permit a bond hearing for a petitioner subject to a final removal order. ECF No. 24. So I consider the government's request withdrawn and I don't resolve it. The government may use the normal means at its disposal to craft appropriate supervision conditions to accompany Vijdani's release.

The Clerk of Court is directed to SEND a copy of this order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada, and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
June 5, 2026

14